## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **CHRISTOPHER AGUILAR,** individually and on behalf of all others similarly situated,<br><br>**vs.**<br><br>**DTE ENERGY COMPANY, DTE PIPELINE COMPANY, DTE GAS COMPANY, DTE MIDSTREAM, LLC, ENBRIDGE (U.S.) INC. AND ENBRIDGE INC.** | **DOCKET NO.**<br>_____<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### I.  SUMMARY

1.    Plaintiff Christopher Aguilar brings this lawsuit to recover unpaid overtime wages and other damages from DTE Energy Company, DTE Pipeline Company, DTE Gas Company, DTE Midstream, LLC (collectively "DTE"), Enbridge (U.S.), Inc. and Enbridge Inc. (collectively "Enbridge") under the Fair Labor Standards Act ("FLSA").

2.    Aguilar and the other workers like him ("Putative Class Members") regularly worked for DTE and Enbridge in excess of forty (40) hours each week.

3.    These workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

4.    These workers were paid a day-rate. This collective action seeks to

recover the unpaid overtime wages and other damages owed to these workers.

## II.   JURISDICTION AND VENUE

5.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.  Specifically, Aguilar worked for DTE and Enbridge in this District and Division in Livingston, Oakland, Macomb, and St. Clair Counties.

## III.   THE PARTIES

7.     Aguilar worked for DTE and Enbridge from September 2016 until November 2018 as a coating inspector.

8.     Aguilar previously filed a consent and joined a lawsuit against Defendant DTE Midstream, LLC in Pennsylvania on November 6, 2019. *Page, et. al. v. DTE Midstream, LLC, et. al.*, Case No. 2:19-cv-01345-LPL, ECF 8 (W.D. Pa. Nov. 6, 2019).

9.     Subsequently in *Page,* the parties agreed that the proper defendant was "DTE Pipeline Company" rather than "DTE Midstream, LLC" and excluded any projects or pipelines in which DTE owned an interest of 50% or less.

10.    Following the voluntary dismissal of Aguilar, the statute of limitations

should be equitably tolled from the filing of Aguilar's consent in the Pennsylvania case, November 6, 2019, through the filing of this complaint.

11.     Throughout his time with DTE and Enbridge, Aguilar received a day-rate with no overtime compensation.

12.     His day rate was less than $455.00 per day.

13.     Aguilar's consents to be a party plaintiff is attached as Exhibit A & B.

14.     Aguilar brings this action on behalf of himself and all other similarly situated workers who were paid by DTE and Enbridge's day-rate system.

15.     Each of these workers received a flat amount for each day worked without overtime pay.

16.     The class of similarly situated workers sought to be certified is defined as follows:

> **All current and former inspectors performing work on behalf of DTE or Enbridge on the Vector Pipeline or the Milford Compressor Station who were paid a day rate in the past three (3) years.** (the Putative Class Members).

17.     Defendants DTE Energy Company, DTE Pipeline Company, DTE Gas Company, and DTE Midstream, LLC are foreign corporations doing business throughout the United States and may be served through their registered agent, Lisa A. Mushong, at One Energy Plaza 23 WCB, Detroit, Michigan 48226 or wherever they may be found.

18.     Defendants Enbridge (U.S.), Inc. or Enbridge Inc. are foreign corporations doing business throughout the United States and may be served through their registered agent, The Corporation Company, 40600 Ann Arbor Rd E Suite 201, Plymouth, Michigan 48170 or wherever they may be found.

## IV.   COVERAGE UNDER THE FLSA

19.     For at least the past three years, Defendants have been employers within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20.     At all times hereinafter mentioned, Defendants have been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21.     At all times hereinafter mentioned, Defendants have been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce—such as inspection equipment, hand tools, computers, automobiles, and cell phones—by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

22.     For at least the past three years, Aguilar and the Putative Class

Members were engaged in commerce or in the production of goods for commerce.

## V.   FACTS

23.      Aguilar worked for DTE and Enbridge on the Vector pipeline throughout Southern and Eastern Michigan.

24.      During this same timeframe, Aguilar also worked for DTE performing inspection services at the Milford Compressor in Milford, Michigan.

25.      Vector Pipeline "is a 348-mile pipeline between Joliet, Illinois and Dawn, Ontario. There are 274 miles of 42-inch diameter pipeline and 59 miles of 36-inch diameter pipeline in the U.S. [and] [t]here are five compressor stations with a total of 120,000 horsepower, all using low NOx Solar brand gas turbines. [...] It is a partnership between Enbridge Inc. and DTE Energy, with ownership interests of 60% and 40%, respectively."[1]

---

[1] http://www.vector-pipeline.com/About-Us/About-Vector.aspx



https://www.dtemidstream.com/pipelines/

26.     To complete their business objectives, DTE and Enbridge rely on inspectors.

27.     For example, Aguilar worked for DTE and Enbridge September 2016 until November 2018 as a coating inspector.

28.     As a coating inspector, Aguilar's primary job duties included inspecting the paint and various coatings on oil and gas pipelines, storage facilities, and other construction and production projects as needed.

29.     Aguilar did not have any supervisory duties.

30.     Aguilar did not hire for fire employees.

31.     Aguilar did not exercise discretion and judgment as to matters of

significant.

32.    To the contrary, Aguilar worked with his hands.

33.    Aguilar performed manual labor.

34.    Aguilar used hand tools to work on pipelines.

35.    Aguilar worked in the elements and would become dirty as a result of his work.

36.    Aguilar worked in dangerous conditions.

37.    Pipelines have the potential to explode.

38.    Pipelines can be dangerous.

39.    Aguilar did not work in an office.

40.    Aguilar did not manage a business unit.

41.    Aguilar could not make decisions as to matters of significance that would impact overall business operations.

42.    Aguilar's decisions were limited to routine and manual tasks surrounding pipeline inspections for DTE and Enbridge.

43.    Aguilar was heavily supervised by DTE and Enbridge.

44.    Aguilar was required to follow DTE and Enbridge policies and procedures.

45.    Aguilar reported to DTE and Enbridge on a regular basis.

46.    DTE and Enbridge determined the pay practice through which Aguilar

is compensated.

47.   DTE and Enbridge did not guarantee Aguilar a salary.

48.   DTE and Enbridge did not provide Aguilar overtime pay.

49.   DTE and Enbridge employed Aguilar for purposes of the FLSA.

50.   DTE and Enbridge set Aguilar's schedule.

51.   DTE and Enbridge required Aguilar to work over 40 hours in a week.

52.   DTE and Enbridge typically scheduled Aguilar to work 10-12 hour shifts, for as many as 6-7 days a week.

53.   DTE and Enbridge keep accurate records of the hours, or at least days, of Aguilar's work.

54.   DTE and Enbridge required Aguilar to report his time to them.

55.   DTE and Enbridge required Aguilar to report his expenses to them.

56.   DTE and Enbridge approved Aguilar's time worked.

57.   DTE and Enbridge approved Aguilar's expenses.

58.   Aguilar did not receive a day rate that exceeded $455 a day.

59.   Aguilar did not receive more than $100,000.00 a year.

60.   Separate from his day rate, Aguilar was paid a per diem.

61.   The per diem Aguilar was paid was not considered wages.

62.   Aguilar was paid other reimbursements.

63.   The reimbursements Aguilar was paid were not considered wages.

64.    Aguilar's work was production based.

65.    Aguilar's work was integral to the operation of DTE and Enbridge's pipelines and crude transportation.

66.    Aguilar was prohibited from deviating from DTE and Enbridge's quality standards.

67.    Aguilar is a blue-collar worker.

68.    Aguilar is not exempt under any white-collar exemption.

69.    Aguilar was not guaranteed a salary.

70.    DTE and Enbridge cannot demonstrate that Aguilar was paid on a salary basis in accordance with the FLSA.

71.    DTE and Enbridge cannot demonstrate that Aguilar was not its employee for purposes of the FLSA.

## VI.    FLSA VIOLATIONS

72.    Aguilar incorporates the preceding paragraphs by reference.

73.    As set forth herein, DTE and Enbridge violated the FLSA by failing to pay Aguilar and the Putative Class Members overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

74.    At all relevant times, DTE and Enbridge has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

9

75.     DTE and Enbridge employed Aguilar and each member of the Putative Class.

76.     DTE and Enbridge's pay policy denied Aguilar and the Putative Class Members overtime compensation at the legal overtime rates required by the FLSA.

77.     DTE and Enbridge owes Aguilar and the Putative Class Members overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

78.     DTE and Enbridge knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA. Its failure to pay overtime to Aguilar and the Putative Class is willful.

79.     Due to DTE and Enbridge's FLSA violations, Aguilar and the Putative Class Members are entitled to recover from DTE and Enbridge for their unpaid overtime compensation, liquidated damages, treble damages, reasonable attorney fees, costs, and expenses of this action.

80.     The improper pay practices at issue were part of a continuing course of conduct, entitling Aguilar and Putative Class Members to recover for all such violations, regardless of the date they occurred.

## VII.   COLLECTIVE ACTION ALLEGATIONS

81.     Aguilar incorporates all previous paragraphs and alleges that the illegal pay practices DTE and Enbridge imposed on Aguilar were likewise imposed on the

Putative Class Members.

82.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

83.     The Putative Class Members were subject to the same working conditions as Aguilar.

84.     The Putative Class Members are similarly situated based on DTE and Enbridge's common pay policy.

85.     The Putative Class Members are similarly situated based on DTE and Enbridge's common practices applied to all Putative Class Members.

86.     The Putative Class Members are similarly situated because DTE and Enbridge' plan regarding the use and pay of Putative Class Members is similar.

87.     The Putative Class Members' primary job duties included inspecting oil and gas pipelines, storage facilities, and other construction and production projects as needed.

88.     Putative Class Members did not have any supervisory duties.

89.     Putative Class Members did not hire or fire employees.

90.     Putative Class Members did not exercise discretion and judgment as to matters of significance.

91.     To the contrary, Putative Class Members worked with their hands.

92.     Putative Class Members performed manual labor.

93.   Putative Class Members used hand tools to work on pipelines.

94.   Putative Class Members worked in the elements and would become dirty as a result of their work.

95.   Putative Class Members worked in dangerous conditions.

96.   Putative Class Members do not work in an office.

97.   Putative Class Members do not manage a business unit.

98.   Putative Class Members cannot make decisions as to matters of significance that would impact overall business operations.

99.   Putative Class Members' decisions are limited to routine and manual tasks surrounding pipeline inspections for DTE and Enbridge.

100.   Putative Class Members are heavily supervised by DTE and Enbridge.

101.   Putative Class Members are required to follow DTE and Enbridge policies and procedures.

102.   Putative Class Members report to DTE and Enbridge on a regular basis.

103.   DTE and Enbridge determined the pay practice through which all Putative Class Members are compensated.

104.   DTE and Enbridge did not guarantee the Putative Class Members a salary.

105.   DTE and Enbridge did not provide the Putative Class Members overtime pay.

106.   DTE and Enbridge employed the Putative Class Members for purposes of the FLSA.

107.   DTE and Enbridge set the Putative Class Members' schedule.

108.   DTE and Enbridge required the Putative Class Members to work over 40 hours in a week.

109.   DTE and Enbridge typically scheduled Putative Class Members to work 10-12 hour shifts, for as many as 6-7 days a week.

110.   DTE and Enbridge keeps accurate records of the hours, or at least days, of the Putative Class Members' work.

111.   DTE and Enbridge required the Putative Class Members to report their time to it.

112.   DTE and Enbridge required the Putative Class Members to report their expenses to it.

113.   DTE and Enbridge approved the Putative Class Members' time worked.

114.   DTE and Enbridge approved the Putative Class Members' expenses.

115.   The Putative Class Members did not receive a day rate that exceeded $455 a day.

116.   The Putative Class Members did not receive more than $100,000 a year.

117.   The Putative Class Members were paid other reimbursements.

118.   The reimbursements were not considered wages.

119.   The Putative Class Members' work was production based.

120.   The Putative Class Members' work was integral to the operation of DTE and Enbridge's pipelines and crude transportation.

121.   The Putative Class Members were prohibited from deviating from DTE and Enbridge's quality standards.

122.   The Putative Class Members are blue collar workers.

123.   The Putative Class Members are not exempt under any white-collar exemption.

124.   The Putative Class Members were not guaranteed a salary.

125.   DTE and Enbridge cannot demonstrate that the Putative Class Members were paid on a salary basis in accordance with the FLSA.

126.   DTE and Enbridge cannot demonstrate that the Putative Class Members were not its employees for purposes of the FLSA.

127.   Numerous other individuals who worked with Aguilar indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

128.   Based on his experiences and tenure with DTE and Enbridge, Aguilar is aware that DTE and Enbridge's illegal practices were imposed on the Putative Class Members.

129.   The Putative Class Members were all not afforded the overtime

compensation when they worked in excess of forty (40) hours per week.

130.   DTE and Enbridge's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

131.   Aguilar's experiences are therefore typical of the experiences of the Putative Class Members.

132.   The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

133.   Aguilar has no interest contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Aguilar has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

134.   A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

135.   Absent this action, many Putative Class Members likely will not obtain redress of their injuries and DTE and Enbridge will reap the unjust benefits of violating the FLSA and any other applicable state labor laws.

136.   Furthermore, even if some of the Putative Class Members could afford individual litigation against DTE and Enbridge, it would be unduly burdensome to the judicial system.

137.   Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

138.   The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a.   Whether DTE and Enbridge employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA;

b.   Whether DTE and Enbridge's day rate pay practice meets the salary-basis test;

c.   Whether DTE and Enbridge's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

d.   Whether DTE and Enbridge's violation of the FLSA was willful; and

e.   Whether DTE and Enbridge's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

139.   Aguilar's claims are typical of the claims of the Putative Class Members. Aguilar and the Putative Class Members sustained damages arising out of DTE and Enbridge's illegal and uniform employment policy.

140.   Aguilar knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

141.   Although the issue of damages may be somewhat individual in

character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## VIII.  JURY DEMAND

142.     Aguilar demands a trial by jury.

## IX.   RELIEF SOUGHT

WHEREFORE, Aguilar prays for judgment against DTE and Enbridge as follows:

a.     An Order designating the Putative Class as a FLSA collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.     For an Order appointing Aguilar and his counsel to represent the interests of the FLSA Class;

c.     For an Order finding DTE and Enbridge liable to Aguilar and the Potential Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

d.     For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

e.     For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/Jennifer L. McManus*
Jennifer L. McManus (P65976)
Local Attorney for Plaintiff
**Fagan McManus, P.C.**

25892 Woodward Avenue
Royal Oak, MI 48067-0910
(248) 542-6300
jmcmanus@faganlawpc.com

**AND**

Michael A. Josephson
Texas Bar No. 24014780
mjosephson@mybackwages.com
Andrew W. Dunlap
Texas Bar No. 24078444
adunlap@mybackwages.com
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**